JOHN M. PALMER *et al.*

*v.*

JOSEPH E. WOODS *et al.*

*Filed at Springfield January 13, 1894.*

1. REVERSAL OF DECREE—*its effect on the case on remandment.* A judgment of the Appellate Court reversing the judgment or decree of the trial court, and remanding the cause without specific directions, gives the trial court power over the record to allow amendments to the pleadings, to permit the introduction of further testimony, or to take any other step in the proceeding consistent with the principles announced in the opinion of the Appellate Court.

2. But such remandment does not, *ipso facto*, open up the sufficiency of the pleadings previously passed upon, nor does it have the effect of vacating all orders made in the case prior to the appeal or writ of error. By the reversal the decree is, in effect, expunged from the record, and the court has the same power over the record as it had before the judgment or decree was rendered. The pleading, and all orders in the case, stand as they did before the trial or hearing, unless they are disturbed by the decision of the Appellate Court.

3. Where the circuit court held certain pleas in a chancery suit to be insufficient to bar relief, and such decree was reversed by the Appellate Court, and the case was remanded generally, leaving the order as to the pleas in full force and unreversed, it was *held,* that such order was not opened for further argument as to the sufficiency of the pleas.

4. PARTIES—*in chancery—on bill to reach a fund where many persons have claims thereon.* Where there are many persons standing in the same situation as to their rights or claims upon a particular fund, and where the shares of a part can not be determined until the rights of all the others are settled or ascertained, as in the case of creditors of an insolvent estate, all the parties interested in the fund must, in general, be brought before the court, so that there may be but one account and one decree settling the rights of all.

5. And if it appears upon the face of the complainant's bill that an account of the whole fund must be taken, and that there are other parties interested in the distribution thereof to whom the defendants would be bound to render a similar account, the latter may object that all who have a common interest with the complainants are not before the court.

6. In such case, in order to remedy the inconvenience of making a great number of parties to the suit, and compelling those to litigate

who might otherwise make no claim upon the defendants or the fund in their hands, the method was devised of permitting the complainants to prosecute in behalf of themselves and all others standing in the same situation who may afterward elect to come in and claim as parties to the suit and bear their proportion of the expenses of the litigation.

7. If such parties neglect to come in under the decree, after a reasonable notice for that purpose, the fund will be distributed without reference to any unliquidated or unsettled claims which they might have had upon the same. But if the rights of such absent parties are known and ascertained by the proceedings in the suit, provision will be made for them in the decree. In either case, the court will protect the defendants against any further litigation in respect to the fund.

8. A bill was filed by two parties, as creditors of an insolvent bank, to enforce the personal liability of the stockholders to satisfy the debts. Some other parties came in voluntarily, and the court had notice given for all other creditors to come in and prove their demands upon the fund. Afterward the court dismissed the latter creditors out of the case, and ascertained the claims of the voluntary parties and the liability of the stockholders, which was greatly in excess of the complainant's demand. Afterward some of the creditors dismissed out of the case filed their like bill to obtain payment of their demands. The defendants, the stockholders, pleaded the prior proceedings and decree in bar of the second suit: *Held,* the pleas were insufficient, there being nothing in the pleas to show that the common fund was not more than enough to pay all the creditors of the bank in full, and hence there was no necessity of *pro rating* that fund.

9. CORPORATIONS—*creditor's remedy against stockholders—parties to bill.* In this State a corporation creditor may, after judgment against the corporation and execution returned unsatisfied, proceed by bill against one or more delinquent stockholders, without joining all, those sued having the right to bring in all others by cross-bill.

10. FORMER ADJUDICATION—*plea of a prior decree in bar of a second suit.* A complainant can not be held bound by a decree in a prior case to which he was not a party and to which he never consented, and such decree can not be pleaded in bar of a bill filed by him.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JACOB FOUKE, Judge, presiding.

Messrs. PALMER, SHUTT & DRENNAN, for the appellants:

The court, by the decree in the *Palmer case,* assumed the administration and settlement of the fund, and the decree was

made for the benefit of all the creditors. Story's Eq. Pl. sec. 99; *Queenan* v. *Palmer*, 117 Ill. 619; *Ross* v. *Crary*, 1 Paige, 419; *Thompson* v. *Brown*, 1 Johns. Ch. 612; *Cockburn* v. *Thompson*, 16 Ves. 325; 2 Daniell's Ch. Pr. 1205, notes.

There are cases in which it is competent for some persons to come into a court of equity as plaintiff for themselves and others having similar interest, but in all those cases the parties have an interest in the subject matter which enables them to sue, and the others are treated as a kind of plaintiffs with those named, although they are not named. Story's Eq. Pl. secs. 96, 99; *Mayor* v. *Canal Co.* 12 Pet. 91; *Hallett* v. *Hallett*, 2 Paige, 19.

But when the bill is brought in behalf of themselves and all others, all creditors are in a sense deemed before the court. Story's Eq. Pl. sec. 103; *Cockburn* v. *Thompson*, 16 Ves. 327; *Tunesma* v. *Schuttler*, 114 Ill. 157; *Eames* v. *Doris*, 102 id. 350.

A final decree is one which determines the rights of the parties, or a distinct or definite part thereof. *Lease* v. *Sherwood*, 21 Cal. 151.

The decree in this case was final, as it created a fund for the benefit of the creditors of the savings bank, and being rendered for all the creditors, it binds them unless assailed directly. *Tunesma* v. *Schuttler*, 114 Ill. 157.

The other creditors may come in under the decree and prove their debts before the master to whom the cause is referred, and obtain satisfaction of their demands equally with the plaintiffs in the suit, and under such circumstances they are treated as parties to the suit. If they, however, decline to come in before the master, they will be excluded from the benefit of the decree, and yet they will, from necessity, be bound by the acts done under the authority of the court. Story's Eq. Pl. sec. 99; *Hallett* v. *Hallett*, 2 Paige, 19.

It is said in the case last cited: "In either case the court will protect the defendants against any further litigation in respect to the fund," referring to 9 Price, 210.

An appeal from the final decree necessarily opens for consideration all prior orders or decrees any way connected with the final decree. On appeal the court will not re-examine anything that has been decided on a former appeal, as that is *res judicata*, but what is decided simply as incidental to the question at issue is not *res judicata.* Freeman on Judgments, sec. 481; *Atkinson* v. *Manks*, 1 Cow. 691; *Jaques* v. *M. E. Church*, 17 Johns. 553; *Le Guen* v. *Gouveneur*, 1 id. 498.

The reversal of the decree then left the question of the sufficiency of the pleas before the circuit court, to be again considered. The pleas being before the court, it was error to proceed without first disposing of them. It is to be observed that after a plea has been filed, no step can be taken in the cause until the plea is disposed of. 1 Daniell's Ch. Pr. 714.

Mr. G. A. KEYES, and Mr. R. L. McGUIRE, for the appellees:

Depositors of the Springfield Savings Bank who did not come into the *Queenan case* may file a bill subsequently to establish their own rights, not disturbing what had been done under the decree in that case. Story's Eq. Pl. (7th ed.) sec. 135 a; *Brinckhoff* v. *Brown*, 6 Johns. Ch. 151.

The depositor in that bank who was not a party to the *Queenan case* is no further bound by the account and decree than as to that portion of aid given to the parties before the court. Story's Eq. Pl. sec. 94.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This cause originated in the circuit court of Sangamon county by bill in chancery filed August 24, 1886, wherein appellees were complainants, and appellants, with others, defendants. The purpose of the bill was to enforce the individual liability of the defendants, as stockholders of the Springfield Savings Bank, for the payment of amounts alleged to be severally due the complainants as depositors and creditors of the bank. A similar bill had been filed in the same court on the

21st of January, 1880, by Mary Queenan and George Kerger, on behalf of themselves and all other creditors of the bank who would come in and contribute to the expenses of the suit. Prior to December 27, 1882, several other creditors of the bank did voluntarily come in by way of interpleader, and were made parties to that bill. On the last named date, on the motion of complainants, "all other creditors standing in the same general relation to the defendants as complainants" were ordered to come in and file their claims on or before February 18, 1883, and in pursuance thereof notice by publication was given by the master in chancery to all creditors to file their claims before him on or before the date named. Afterwards, in obedience to that order and notice, certain of the complainants in this bill filed their claims and proved them before the master, but at the hearing, January 29, 1885, it was ordered, among other things, that all such claims should be stricken from the files, it being recited in the order that the former one had been inadvertently made. The court then proceeded to find the amounts due those who had become voluntarily parties to the bill, the aggregate of which was $8886.91. It found the number of shares of stock liable for the claims allowed to be six hundred and seventy-eight, and the total value of those shares to be $67,800. The amount of the claims found due was then apportioned among the holders of the shares of stock found liable, which they were ordered to pay, etc.

To the present bill, Palmer, Helmle and Reisch filed four pleas. On the 25th of January, 1889, these pleas were set down for argument and adjudged insufficient, and the defendants electing to stand by them, their default was entered, and the bill as to them taken as confessed. On the 15th of July, 1890, a final decree was entered in favor of complainants, and these appellants appealed to the Appellate Court for the Third District. That court reversed the decree for reasons stated in its opinion, but holding with the circuit court as to the insufficiency of the defendants' said pleas, (see 40 Ill. App.

182,) and remanded the cause generally. On the 29th of September, 1891, the cause was, by order of the circuit court, referred to the master to take proof. On December 30, 1891, defendants entered their motion to set aside the order of reference and set down the pleas for argument, but the court overruled the motion. The cause again proceeded to a hearing, and a decree was rendered according to the prayer of the bill, which has been affirmed by the Appellate Court.

The first ground of reversal urged is, the refusal of the circuit court to set down the pleas for argument after the remandment of the cause by the Appellate Court. It is true, the remanding without specific directions gave the circuit court power over the record to allow amendments to the pleadings, permit the introduction of further testimony, or take any other step in the proceeding consistent with the principles announced in the opinion of the Appellate Court, but it did not, *ipso facto,* open up the question of the sufficiency of pleadings previously passed upon. In other words, a general order of remandment does not, as is assumed in the argument, have the effect of vacating all orders made in the case prior to the appeal or writ of error. As was said in *Chickering et al.* v. *Failes et al.* 29 Ill. 303 : "When the reversal of a decree or judgment occurs, the judgment of the court below, as to the parties to the record, is entirely abrogated, and the cause then stands in the court below precisely as if no trial had occurred. The case is then remitted to that court in precisely the same condition, in all respects, as it occupied before the trial in that tribunal. The decree, by its reversal, is in effect expunged from the record, and the court below has the same power over the record which it possessed before its decree or judgment was rendered." The judgment or decree is vacated, but the pleadings and all orders in the case stand just as they were before the trial or hearing, unless they are disturbed by the decision of the Appellate Court. The court may allow amendments to the pleadings, and modify or set aside former orders, acting in harmony with

the decision of the higher court; but unless it is asked to do so, the case stands for re-trial on the same issues previously formed. Here the pleas had once been adjudged bad on argument. That judgment was in full force, in no way disturbed by the decision of the Appellate Court. Why should the circuit court have been required to decide the same question again? There was no motion to set aside the former adjudication, for leave to amend, or file other pleas or answers. The court was simply asked to reconsider its former ruling on the sufficiency of the pleas. It was clearly right in refusing to do so, unless it had, from the opinion of the Appellate Court or otherwise, become convinced that its prior ruling was wrong. But if it were otherwise, no injury has resulted to appellants. They were given the full benefit of an exception to the ruling of the circuit court on the sufficiency of their pleas, and had it reviewed in the Appellate Court, and now present it to this court. Did the circuit and Appellate Courts err in holding the pleas insufficient?

The first of these pleas sets up the proceedings in the former case in bar against all of the complainants. The third sets up the same proceeding in bar as to those of the complainants who filed their claims with the master, in pursuance of the order of December 27, 1882. We think a complete answer to all that is or can be said in favor of the validity of either of those pleas is, none of the complainants in this bill were parties to the decree pleaded in bar. Those who filed their claims in obedience to the directions of the court were not voluntary parties, and when dismissed from the case and their claims stricken from the files they were in no worse position than those who never observed the first order of the court. No one objected to their being ordered out of the case. They were not bound to do so themselves. The question, therefore, in both pleas is the same, viz., shall complainants in this case be held bound by a decree in another to which they were not parties and to which they never consented.

That the proposition is against the general rule is admitted, but an attempt is made to bring it within exceptions to that rule. The exception relied upon is stated by the chancellor in *Hallett* v. *Hallett*, 2 Paige, 12, thus: "If there are many parties standing in the same situation as to their rights or claims upon a particular fund, and when the shares of a part can not be determined until the rights of all the others are settled or ascertained, as in the case of creditors of an insolvent estate or residuary legatees, all the parties interested in the fund must, in general, be brought before the court, so that there may be but one account and one decree settling the rights of all. And if it appears on the face of the complainants' bill that an account of the whole fund must be taken, and that there are other parties interested in the distribution thereof to whom the defendants would be bound to render a similar account, the latter may object that all who have a common interest with the complainants are not before the court. In these cases, to remedy the practical inconvenience of making a great number of parties to the suit, and compeling those to litigate who might otherwise make no claim upon the defendants or the fund in their hands, a method has been devised of permitting the complainants to prosecute in behalf of themselves and all others standing in the same situation who may afterwards elect to come in and claim as parties to the suit and bear their portion of the expenses of the litigation. If such parties neglect to come in under the decree after a reasonable notice for that purpose, the fund will be distributed without reference to any unliquidated or unsettled claims which they might have had upon the same. But if the rights of such absent parties are known and ascertained by the proceedings in the suit, provision will be made for them in the decree. (Anon. 9 Price, 210.) In either case the court will protect the defendants against any further litigation in respect to the fund,"—citing *Farrell* v. *Smith*, 2 Ball & B. 337.

Not only do the pleas in question fail to bring the complainants within this exception, but it is too clear for argument that none could have been drafted, in conformity with the facts appearing in the *Queenan case,* which would, under the rule stated, have been a bar to this action. Conceding that *Queenan* v. *Palmer et al.* 117 Ill. 619, is to the effect that the liability of the stockholders of the Springfield Savings Bank constitutes a common fund for the benefit of depositors of the bank, within the rule stated, still there was nothing in the former bill to show that the shares of the complainants in that fund could not be determined without reference to the claims of others. In other words, there was nothing in that bill, nor is there anything in the pleas, to show that the common fund, if to be treated as such, was not more than sufficient to pay all the creditors of the bank in full, and hence there was no necessity for *pro rating* that fund.

It was said in *Egbert* v. *Wood,* 3 Paige, 575, speaking of the application of the rule : "When it appears upon the face of the bill that there will be a deficiency in the fund, and there are other creditors or legatees who are entitled to a ratable distribution with the complainants and who have a common interest with them, such creditors or legatees should be made parties to the bill, or the suit should be brought by the complainants in behalf of themselves and all others standing in a similar situation, and it should be so stated in the bill." But in *Dias* v. *Bouchand,* 10 Paige, 445, it was said : "And in a suit against the personal representatives to recover a debt due from the estate of the decedent, it is only necessary for the complainant to file the bill in behalf of himself and all other creditors standing in the same situation, where it appears, upon the face of the bill, that there will be a deficiency in the fund, and also that there are other creditors who are entitled to a ratable proportion with the complainants,"— citing *Egbert* v. *Wood, supra.*

Although Queenan and Kerger filed their bill on behalf of themselves and all other creditors who would come in, etc., thus offering the opportunity to any who desired to become parties, we are unable to see why they should have been delayed in their suit until others could be brought in by notice and allowed time to establish their claims, there being nothing to show that the amount of their recovery depended upon the determination of such other claims; and although the court had made an order and directed notice to be given so as to make all other creditors of the bank parties, when it appeared that no necessity existed for doing so it very properly set aside that order, and left the case standing as though it had never been made. The question here is not whether complainants could have established their claims there, nor as to the power of the court, in that case, to have brought all the creditors of the bank before it and adjudicated their rights, and therefore *Eames et al.* v. *Doris,* 102 Ill. 350, *Tunesma* v. *Schuttler,* 114 id. 157, and *Pennell* v. *Lamar Ins. Co.* 73 id. 307, cited in appellants' briefs, are wholly inapplicable. The pleas fail also to show that the court did establish a common fund in that case out of which the claims of other creditors could be satisfied. It found the extent of the liability of the stockholders, but it only ordered enough collected from each to pay his *pro rata* share of the claims allowed.

The second plea was the five years' statute of limitations. It is not insisted upon here. It clearly presented no defense to the action. See opinion of the Appellate Court.

The fourth plea raises the question whether, in a bill of this kind, all the stockholders of the corporation must be joined as defendants. It must be regarded as settled in this State that a corporation creditor may, after judgment against the corporation and execution returned unsatisfied, proceed by bill against one or more delinquent stockholders without joining all, those sued having the right to bring in all others by

cross-bill. (*Young et al.* v. *Farwell,* 139 Ill. 332, and authorities cited.) We are unable to perceive why the same rule, and the reasoning upon which it is based, is not applicable to a case like this. The object here is to reach the individual liability of stockholders, without reference to the final adjustment of the affairs of the corporation. We think, with the Appellate Court, that a bill of this character can be maintained against stockholders without joining them all as defendants. If those so sued deem it material to the protection of their rights that all stockholders shall be brought into the case, they can avail themselves of that relief by cross-bill. In this view the fourth plea must also be held to present no defense to the action.

It follows that the judgment of the Appellate Court is right on the whole record, and should be affirmed.

*Judgment affirmed.*